IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TODD HAWKINS,                              )
                                           )
              Plaintiff,                   )
                                           )
       v.                                  )    1:16CV778
                                           )
NANCY A. BERRYHILL,                        )
Acting Commissioner of Social Security,    )
                                           )
              Defendant.                   )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Todd Hawkins ("Plaintiff"), proceeding *pro se*, filed a Complaint [Doc. #1] in this Court on June 24, 2016, seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("The Act").

Defendant subsequently moved for dismissal of the Complaint on statute of limitations grounds. Noting that Plaintiff did not file his Complaint until June 24, 2016, 175 days after the time for bringing the action expired, this Court recommended dismissal of Plaintiff's Complaint. Plaintiff filed an Objection to the Recommended Ruling, contending that he timely mailed the Complaint in December 2015. Plaintiff attached a mail receipt, with a tracking number that reflected delivery of a package on December 31, 2015. However, the receipt failed to show the address that the package was sent to or the name of the person who signed for the package, and the Court has no record of receiving anything prior to receipt of

the Complaint filed on June 24, 2016. Therefore, this Court stayed the action and permitted Plaintiff a period of time to submit evidence of the mailing and delivery of the Complaint to this Court in December 2015. After Plaintiff failed to comply with that Order, this Court again recommended dismissal of Plaintiff's action. Plaintiff again filed an Objection, contending that he timely filed the Complaint and/or that the statute of limitations should be equitably tolled. Given the nature of Plaintiff's contentions, Plaintiff's *pro se* status, and the history of this case, the Court stayed Defendant's Motion to Dismiss to allow the parties to file cross motions for judgment.

The parties have now filed cross motions for judgment, and the administrative record has been certified to the Court for review. In considering the matter, the Court notes that Plaintiff's response to Defendant's motion fails to address the timeliness of Plaintiff's filing in any way or to argue in favor of equitable tolling. Plaintiff has not provided the Court with an affidavit or other requested evidence of the address that the package was sent to or the name of the person who for signed the package. In the circumstances, there is no basis to find that Plaintiff timely mailed and delivered the Complaint to this Court in December 2015, as Plaintiff alleges. Nevertheless, given Plaintiff's *pro se* status and the prior contentions raised, the Court has considered whether Plaintiff's Complaint, had it been timely filed, would merit remand of the ALJ's decision. For the reasons set out below, the Court finds that Plaintiff's claims are without merit, and the Court recommends that the decision be affirmed and that Defendant's Motion for Summary Judgment be granted.

I.  PROCEDURAL HISTORY

Plaintiff initially filed his application for DIB on November 4, 2009, alleging a disability onset date of January 30, 2009. (Tr. at 47, 255-56.) Plaintiff's application was denied initially (Tr. at 156-59) and upon reconsideration (Tr. at. 162-65). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 166-67.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on March 12, 2012. (Tr. at 81-102.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from his alleged onset date through June 29, 2012, the date of his decision. (Tr. at 130-39.) However, on August 5, 2013, the Appeals Council remanded the case for a new hearing. (Tr. at 144-47.) Plaintiff appeared without an attorney at his second hearing, held on April 12, 2014. (Tr. at 47, 62.)[1] The ALJ again concluded that Plaintiff was not disabled within the meaning of the Act from Plaintiff's alleged onset date through September 9, 2014, the date of the administrative decision. (Tr. at 44-54.) On October 28, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 3-8)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v.

---

[1] The ALJ offered to continue the hearing to allow Plaintiff to seek assistance from an attorney and secure the presence of a representative for the hearing, but Plaintiff elected to proceed with the hearing without a representative.

3

Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.³ Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

³ "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

III. **DISCUSSION**

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2009, his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "congestive heart failure and hypertension." (Tr. at 49.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 50.) Specifically, the ALJ noted that:

> [N]either the [Plaintiff], nor his representative ever alleged that [Plaintiff] met or medically equaled any of the Listings of Impairments. In addition, no treating or examining physician ever alleged that he met or equaled any of the Listings or Impairments. Further, there is no evidence in the record that shows that any of [Plaintiff's] impairments even approached listing-level severity.

(Tr. at 50-51.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with further limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds. He cannot climb stairs. He cannot reach overhead. He cannot perform fine manipulative functions. He must avoid extreme temperatures and moving machinery.

(Tr. at 51.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 53.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 53-54.) In sum, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in the national economy," and, therefore is not disabled under the meaning of the Act. (Tr. at 54.)

After the ALJ issued his decision on September 9, 2014, Plaintiff appealed to the Appeals Council and submitted additional medical records from 2015, including: treatment notes from Advance Family Sports Medicine Center dated March 26, 2015 to July 13, 2015; an August 10, 2015 hospitalization record from Novant Health Forsyth Medical Center; a partial medical record from Novant Health Forsyth Heart and Wellness, dated August 3, 2015; and an echocardiogram report from Wake Forest Baptist Medical Center, dated July 4, 2015 to July 7, 2015. (Tr. at 4, 23-35, 11-19, 22, 36-37.) The Appeals Council denied Plaintiff's request for review and stated that, because the ALJ decided Plaintiff's case through the date of the September 9, 2014 decision, and the "new information is about a later time …, it does not affect the decision about whether [Plaintiff was] disabled on or before the ALJ's decision." (Tr. at 4.)

Plaintiff now argues that remand is required because the Appeals Council erred when it failed to consider the additional medical records and denied review of the ALJ's decision. (Compl. [Doc. #1] at 2.) Plaintiff in his briefing also brings additional claims challenging the ALJ's decision, particularly contending that he should be considered disabled generally and under Listings 4.02 and 4.04 and the Medical Vocational Grid Rules.[4] The Commissioner does not directly address the newly submitted evidence but argues generally that substantial evidence supports the ALJ's decision. For the reasons that follow, the Court finds that remand is not appropriate in this case.

---

[4] Plaintiff brings this action for judicial review *pro se*. The Court is required to construe *pro se* proceedings liberally to allow for the development of a potentially meritorious claim. Haines v. Kerner, 404 U.S. 519, 520 (1972).

8

Plaintiff first asserts that his cardiac impairments meet the listing for chronic heart failure, Listing 4.02, and for ischemic heart disease, Listing 4.04. As previously noted, at the time of the hearing, Plaintiff did not allege that his impairments met or equaled any listing, and the ALJ specifically found that that "there is no evidence in the record that shows that any of [Plaintiff's] impairments even approached listing-level severity." (Tr. at 50-51.) Specifically with respect to Plaintiff's heart condition, the record reflects that Plaintiff had a cardiac event in May 2008, prior to the alleged onset date, during which he "appeared to have global hypokinesis" and an ejection fraction of 15%. (Tr. 420-21, 495.) He was encouraged to stop his alcohol use. (Id.) When he returned to the cardiologist several months later on February 24, 2009, shortly after the January 30, 2009 alleged onset date, Plaintiff's condition had improved on medication, with a normal ejection fraction. (Tr. 366-67.) The ALJ further found as follows with respect to Plaintiff's heart condition:

> The claimant's allegation of disabling congestive heart failure and hypertension is not credible. A review of the medical evidence shows that his condition is not serious and that his symptoms can be managed with medication.
>
> On November 19, 2010, the claimant visited Dr. Clevenger at Winston-Salem Cardiology. Dr. Clevenger noted the claimant's history of left ventricular dysfunction. On November 24, he underwent a stress test. The nuclear physician who was in charge of the examination concluded that the claimant's electrocardiogram was within the normal limits and that there was "no scintigraphic evidence of inducible myocardial ischemia." On January 18, 2011, the claimant presented for an office visit with Dr. Ezeigbo, his primary physician, for monitoring of his congestive heart failure, hypertension, and other medical problems. He complained of dizziness when climbing ladders or bending.
>
> On March 28, 2012, Dr. Egnatz, a consultative examiner, reviewed the claimant's chest x-rays and concluded that there was "no radiographic evidence of acute cardiopulmonary disease" and that the size of his heart was within normal limits. He commented: "It is not medically clear why this man is not able to work." On August 31, 2012, Dr. Powers, a cardiologist, noted the

> normalization of the claimant ejection fraction with medical treatment and his shortness of breath when engaging in activities such as walking up a hill or walking a half-block. He noted the claimant would continue on the medication Coreg (congestive heart failure) and lorstan (hypertension). On May 23, 2013, Dr. Chandra, a cardiologist, noted that the claimant did not have any significant symptoms of congestive heart failure.
>
> Finally, the claimant's lack of a record of treatment for heart disease in 2014 is inconsistent with disabling congestive heart failure. The evidentiary record does not document that he visited any cardiologists for monitoring of his cardiac health in 2014.

(Tr. at 51-52 (internal citations omitted).) Plaintiff has not pointed to any specific error in this analysis, and the record reflects that throughout the relevant period, from the 2009 alleged onset date through the latest treatment in 2013, Plaintiff had normal EKGs and normal ejection fraction, with no further cardiac events noted. (Tr. 370, 396, 552, 531, 610-11, 684, 679-80, 672.) Thus, substantial evidence supports the ALJ's determination regarding Plaintiff's heart disease, which falls well short of meeting any of the criteria for the Listings. Specifically as to Listing 4.04 for ischemic heart disease, all of the medical records reflect that Plaintiff's condition was non-ischemic, with no evidence of narrowing of the arteries. As to Listing 4.02 for congestive heart failure, there are no records reflecting systolic failure or diastolic failure during the relevant time period. Given that there is no medical evidence to support application of the Listings, no further analysis was required.

The Court notes that Plaintiff also contends that the ALJ should have deferred to the opinion of Plaintiff's treating physician, Dr. Ezeigbo. However, Dr. Ezeigbo specifically opined that Plaintiff could work full time, but "[m]ay not be able to climb ladders." (Tr. at 519-20.) The ALJ included that limitation in the RFC in this case, finding that Plaintiff could

not climb ladders, ropes or scaffolds. (Tr. at 51.) Plaintiff does not point to any other limitations or opinions by his treating physicians.

Plaintiff also contends that he is disabled under the Medical-Vocational Guidelines (the "Grids"). However, for an individual of Plaintiff's age, education, and work experience able to do light work, the Grids direct a finding of "not disabled" under Medical-Vocational Rule 202.21, as noted by the ALJ. (Tr. at 54.) Moreover, given the additional limitations from the full range of light work, the ALJ obtained the testimony of a vocational expert ("VE"), who testified that jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity, including the positions of survey monitor, order clerk, and addresser. Relying on the VE's testimony, and using the Grids as a framework, the ALJ found that, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy … and a finding of 'not disabled' is therefore appropriate." (Tr. at 53-54.) Plaintiff has not pointed to any error in this determination, and the Grids do not direct a finding of disability in this case.

Plaintiff also generally contends that he should be considered disabled based on his depression. However, the ALJ found that

> [t]he claimant's allegation of severe depression is not credible. A review of the psychological evidence shows that prior to 2014, his symptoms were treatable with medication and counseling. On January 28, 2011, Ms. Sampson noted that the claimant's GAF score had "increased from 55 pre-treatment to a 70 as of today." During the session, the claimant stated that he was interested in starting a business transporting elderly clients to their appointments. On February 4, 2011, Ms. Sampson noted the claimant had "enrolled in a 3 year online college program for child development in order to fulfill his lifelong dream of becoming a youth counselor." On March 4, 2011, she noted of the claimant: "He believes returning to school has been a significant step toward 'taking control of my life

11

back' and feels encouraged by his continued motivation." On October 16, 2013, the claimant told Ms. Perry, a therapist, that he had reacted in a vengeful manner toward his wife who had been unfaithful to him. On December 5, 2013, Ms. Perry discussed the possibility of marital counseling with him. She also advised him that his drinking "was undoing the effects of his antidepressant meds and exacerbating his depression." On December 12, 2013, she noted the claimant's report that he felt "more energetic" when he refrained from drinking.

> Moreover, for the period under review beginning in 2014, the claimant's allegation of severe depression is not credible. His failure to attend any psychological counseling session is inconsistent with a severe mental impairment. On January 2, he did not show for his appointment. On January 31, Ms. Perry called him to ask whether he wanted to quit psychotherapy. The claimant requested an appointment on February 12. When that date arrived, he canceled. Ms. Perry suggested that he call in two weeks to schedule an appointment, but the record does not show that he ever scheduled another appointment.

(Tr. at 52-53 (internal citations omitted).) Plaintiff has not shown any error in this analysis, and the ALJ's conclusions are supported by the cited evidence in the record.

Finally, Plaintiff has submitted later medical records in support of his claim of disability. Specifically, Plaintiff has submitted treatment notes from Advance Family Sports Medicine Center dated March 26, 2015 and July 13, 2015 (Tr. at 23-35); an August 10, 2015 hospitalization record from Novant Health Forsyth Medical Center (Tr. at 11-19); a partial medical record from Novant Health Forsyth Heart and Wellness, dated August 3, 2015 (Tr. at 22); and a report from Wake Forest Baptist Medical Center, dated July 4, 2015 to July 7, 2015. (Tr. at 36-37.) These records reflect that on March 26, 2015, six months after the ALJ's decision, he was seen for knee pain. (Tr. at 23, 31-35.) Four months later, in July 2015, he was seen for wrist pain. (Tr. at 24-30.) Finally, in July and August 2015, nearly a year after the ALJ's decision, he had another cardiac event, with an ejection fraction of 16% prior to his hospitalization. (Tr. at 11-12, 36-37.)

In considering this submission, the Court notes that all of these records were presented to the Appeals Council as part of Plaintiff's appeal, and the Appeals Council found that "[t]his new information is about a later time" and "does not affect the decision about whether you were disabled beginning on or before September 9, 2014." (Tr. at 4.) In this regard, the Court notes that the Appeals Council must consider additional evidence submitted with the appeal if "the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (citations omitted); see also 20 C.F.R. § 404.970(b).[5] "Evidence is new within the meaning of this section if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome of the case." Id. (citations omitted). Evidence may relate to the period on or before the date of the ALJ's decision even where the additional evidence is dated subsequent to the ALJ's decision, but it must have some "bearing upon whether the Claimant was disabled during the relevant period of time." Reichard v. Barnhart, 285 F. Supp. 2d 728, 733 (S.D.W.V. 2003) (citing Wooldrige v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971)).[6]

---

[5] The Court notes that, effective January 17, 2017, the Agency amended 20 C.F.R. § 404.970(b) to also require, *inter alia*, that a claimant show good cause for not submitting the additional evidence to the ALJ pursuant to 20 C.F.R. § 404.395. However, in the present case, the ALJ issued his opinion on September 9, 2014, and the Appeals Council denied Plaintiff's request for review on October 28, 2015. Consequently, the Court will review the Appeals Council's decision under the version of the regulation in effect at the time that it rendered its decision and based on the reasons stated in that decision.

[6] See 20 C.F.R. § 404.976(b) ("If [the claimant] submit[s] evidence which does not relate to the period on or before the date of the administrate law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.").

In this case, Plaintiff has failed to articulate how the additional medical records from 2015 are related to the nature or extent of his impairments on or before September 9, 2014, the date of the ALJ's decision. Even with Plaintiff's *pro se* status in mind, the Court itself does not discern any relevance between Plaintiff's 2015 records and the pre-decision period. Here, Plaintiff's additional medical records, reflecting treatment Plaintiff obtained in 2015, fail to provide any degree of retrospective insight into Plaintiff's impairments during the relevant period. Indeed, although Plaintiff clearly suffered some type of cardiac event in July or August 2015, the only reference to the time period prior to September 2014 is a notation that his ejection fraction was 50-55% (normal or near normal) in September 2013. (Tr. at 11, 22.) The records from July and August 2015 do not compete with the record regarding Plaintiff's ejection fraction prior to September 2014, do not clarify previous diagnoses, and do not otherwise indicate the extent of Plaintiff's impairment at any time relevant to the ALJ's decision. Therefore, the additional records fail to provide retrospective insight into Plaintiff's impairments.

The Court also notes that in his briefing, Plaintiff contends that his "saturation has gotten worser" and that he needs surgery. (Pl. Brief [Doc. #25] at 1.) Plaintiff also contends that his rheumatoid arthritis is "getting worser" and that his joint pain keeps him from moving much. (Id. at 2.) In addition, Plaintiff contends that his "syncopal episodes are happen[ing] more" which makes him pass out. (Id. at 4.) As this Court has repeatedly advised Petitioner, if Plaintiff seeks to rely on later evidence of new or worsening impairments, Plaintiff would need to file a new

14

application for disability benefits with the Social Security Administration with respect to the period after September 9, 2014.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Defendant's Motion for Judgment on the Pleadings [Doc. #26] be GRANTED, that Defendant's Motion to Dismiss be DENIED as MOOT, and that this action be DISMISSED with prejudice.

This, the 27th day of July, 2018.

                                                  /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge